IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Rashad Richardson | ) | |
| | ) | No. 25CV837 |
| Plaintiffs, | ) | |
| | ) | Honorable Charels Kocoras |
| v. | ) | |
| | ) | |
| Mario Fuentes, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

NOW COMES Defendants Mario Fuentes and Nic Tohatan, by and through their attorney, Kevin Meehan, Assistant Corporation Counsel, and for their Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), states as follows:

**INTRODUCTION**

Plaintiff filed this complaint on January 24, 2025, alleging various Constitutional and Illinois State law violations, including unreasonable search, intrusion on seclusion, unreasonable arrest, malicious prosecution, and battery. ECF 1. However, Plaintiff's own factual allegations provide reasonable suspicion and probable cause to search, arrest, and prosecute Plaintiff. Furthermore, extrinsic evidence - namely, Defendant Officers' body worn camera ("BWC") videos depicting Plaintiff's arrest – demonstrates that Plaintiff's search and arrest did not run afoul of either the Constitution or Illinois law.

**FACTUAL BACKGROUND**

Plaintiff alleges that on January 25, 2024, at approximately 2:30 PM, he was seated in the front passenger seat of a silver Volkswagen SUV parked at or near 40 E. Walton St in Chicago, IL, when a

1

police vehicle occupied by the Defendants stopped nearby and Defendants the exited and approached. ECF 1, ¶ 9. Officers spoke to Plaintiff, told him the car was parked illegally, asked Plaintiff if he had been smoking cannabis, told Plaintiff they smelled burnt cannabis, ordered him out of the vehicle, and patted his coat down. *Id.* ¶¶ 10-11. Plaintiff admitted to officers that he smoked cannabis, had a blunt on his person, and Defendants ordered Plaintiff to produce the blunt, which he did. *Id.* ¶¶ 12-13. Defendants requested Plaintiff's identification, (which he refused to provide), Defendants turned to leave, but instead returned and placed Plaintiff in handcuffs after he asked for their badges and names. *Id.* ¶¶ 14. Defendant Tohatan then searched Plaintiff and retrieved his identification, removed the blunt from Plaintiff's pocket, called for a vehicle to transport Plaintiff, and prepared the SUV to be towed. Id. ¶¶ 15-16. Plaintiff was arrested and charged with unlawful possession of cannabis and obstructing identification, both of which were later dismissed. *Id.* ¶¶ 18-19.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555-56; *see also Swanson v. Citibank, N.A.*, 614 f.3d 400, 404 (7th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "In ruling on 12(b)(6) motions, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor." *Bahiraei v. Blinken*, 717 F.Supp.3d 726, 737 (N.D. Ill.

2024). However, a plaintiff may "plead himself out of court by pleading facts that show that he has no legal claim[.]"*Id.*, quoting *Epstein* v. *Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016).

Further, when video of the relevant events is incorporated by reference into the complaint and is central to the claims, courts need not accept the factual allegations as true if they are blatantly contradicted by the video. *See Bogie v. Rosenberg*, 705 F.3d 603, 608–09 (7th Cir. 2013) (district courts are free to consider video recordings that are referenced in the complaint and central to the claim; to the extent the video conflicts with the complaint, the video controls); *Brownmark Films, LLC v. Comedy Partners, LLC v. Comedy Partners*, 682 F.3d 687, 690–91 (7th Cir. 2012) (stating that it makes "eminently good sense" to extend the incorporation-by-reference doctrine to video recordings); *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) ("When video footage firmly settles a factual issue, there is no genuine dispute about it, and [courts] will not indulge stories clearly contradicted by the footage."); *Esco v. City of Chi.*, 107 F.4th 673, 679 (7th Cir. 2024) (stating "a complaint that contradicts uncontroverted video is not plausible."); *Henderson v. Rangel*, No. 19-cv-06380, 2020 WL 5642943, at *1 n.1 (N.D. Ill. Sept. 21, 2020) (body-worn cameras and police reports were incorporated by reference into plaintiff's complaint); *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *9–10 (N.D. Ill. Sept. 24, 2013) (considering video at motion to dismiss stage). Where a plaintiff relies upon video footage to craft her complaint by asserting factual allegations, including direct quotes from the video, the footage has become arguably central to her claims and the court may consider it at the motion to dismiss stage. *See Haligas v. City of Chicago, et al.,* 609 F.Supp.3d 619, 624 (N.D. Ill. 2022). And where such an exhibit "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie*, 705 F.3d at 609.

Moreover, where facts in the public record that are not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned,

(like BWC video), the Court retains discretion to take judicial notice of such facts on its own accord, even at the pleadings stage. *Johnson v. McDonald, et al.,* 2025WL956703, *2 (N.D. Ill. 2025)("The Court may take judicial notice of the video when assessing whether the plaintiff has pleaded the factual predicates of a viable claim."). *Id.*

Here, Plaintiff has made several factual allegations, including direct quotations, that are clearly taken straight from the BWC video. *See* ECF 1, ¶¶ 11, 12, 14, 15, 17. Further, Plaintiff also makes several allegations that are contradicted by the BWC video, chief among them that there was no basis to search Plaintiff or arrest him. *See* ECF 1, ¶¶ 21-70. The video, however, shows officers observe the Volkswagen SUV with dark tinted windows to be parked in a tow zone with its hazards on. See Ex. A, BWC video of Nic Tohatan, 14:31:35-14:32:04; Ex. B, BWC of Mario Fuentes, 14:31:20-14:31:51. Officers make contact with Plaintiff and ask if he had been smoking weed and Plaintiff responds by first ignoring officers, then failing to respond to attempts to engage by the officers. Ex. B, 14:31:51-14:32:07. Tohatan informs Plaintiff he is parked in a tow zone and Plaintiff responds by immediately raising his voice and becoming argumentative. Ex. A, 14:32:07-14:32:16; Ex. B, 14:32:07-14:32:16. Officers then ask Plaintiff to exit the vehicle, which Plaintiff initially refuses to do, as he briefly begins to put the passenger window up and continues to argue with officers. Ex. A, 14:32:16-14:32:23; Ex. B, 14:32:16-14:32:23. Tohatan then attempts to deescalate, explains again that the car is parked in a tow zone and he can smell weed coming from the car, and asks if Plaintiff had weed and if he smoked any weed at all, which Plaintiff refuses answer. Ex. A, 14:32:23-14:32:55. Tohatan then again asks Plaintiff to exit the car, Plaintiff discards a jacket on the driver's seat, then retrieves the jacket, and reluctantly steps out. Ex. A, 14:32:55-14:33:17. Tohatan briefly pats down the jacket, tries to give it back to Plaintiff, and explains he can see shaves of cannabis on the floor of the SUV. Ex. A, 14:33:17-14:33:46. Plaintiff then raises his voice and continues to be argumentative, until Tohatan asks him to stop yelling at him. Ex. A, 14:33:46-14:34:02. Plaintiff then admits he has a blunt on his person and

4

Tohatan observes a large bulge on Plaintiff's pocket. Ex. A, 14:34:02-14:34:22. Tohatan then briefly pats Plaintiff down. *Id.* Plaintiff continues to speak loudly and Tohatan asks Plaintiff to show him the blunt and Plaintiff retrieves it from an open package in his pocket. Ex. A, 14:34:22-14:35:00. Plaintiff then admits to Tohatan that the officers were not lying when they informed Plaintiff that they could smell weed coming from the SUV, but Plaintiff did not smoke inside the vehicle and there was no weed on the floor, seemingly because children access the vehicle. Ex. A, 14:35:00-14:35:38. Tohatan asks Plaintiff to provide an ID and Plaintiff refuses because he does not want his name ran by officers. Ex. A, 14:35:39-14:35:53. At this time Fuentes had begun a narcotics search of the vehicle and located an open bottle of liquor under the driver's seat, which causes Plaintiff to yell out that he was not the driver. Ex. B, at 14:34:03-14:34:25. Tohatan informs Plaintiff there is alcohol in the car and also explains that transporting cannabis in a vehicle in the manner Plaintiff is transporting it is illegal. Ex. A, 14:35:53-14:36:10. The video then shows officers ready to leave without citing Plaintiff for the marijuana. Ex. A, 14:36:10-14:36:20. Plaintiff, however, extends the encounter by asking for the officers' badge numbers, which causes officers to tell him if he provides an ID they will provide him with documentation of the stop. Ex. A, 14:36:20-14:36:25. Plaintiff responds by raising his voice again, officers explain to Plaintiff he is unlawfully possessing cannabis, and detain Plaintiff in handcuffs while they locate his ID and the cannabis in his pocket. Ex. A, 14:36:25-14:38:04. Plaintiff is arrested for the cannabis and obstructing identification. *Id.*

In its entirety, the BWC video contradicts Plaintiff's claims, as it shows a valid basis for both Plaintiff's search and arrest. Further, Plaintiff obviously viewed the video to obtain the very specific quotations used within the allegations in his complaint thereby incorporating it and making it central to his claims. And at the very least, this Court can take judicial notice of the video at this stage. As such, this Court should consider the BWC video.

5

**ARGUMENT**

I.    **COUNTS I, II, III, AND IV**

There was reasonable suspicion to search Plaintiff. Therefore, his claims in counts I, II, III, and IV must fail.

    a.    **The Search Claims**

"To justify a pat down of the driver or a passenger during a traffic stop, ... the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). "Certainty about the presence of a weapon is unnecessary; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Ford*, 872 F.3d 412, 414–15 (7th Cir. 2017). "A court looks to the "totality of circumstances confronting the officer" in determining whether there was reasonable suspicion for a frisk." *U.S. v. Colbert*, 54 F.4th 521, 526 (7th Cir. 2022). Factors that may be considered in the totality of the circumstances analysis include the odor of marijuana, evasive behavior, and delay in exiting a vehicle after being lawfully ordered to do so by an officer. *Id.* at 526-530. Alternatively, where officers have probable cause to arrest an individual for carrying improperly stored cannabis, in violation of state law, they have probable cause to search that person for evidence of the crime. *Bennett v. City of Chicago* 2025WL2084114, *3 (N.D. Ill. July 24, 2025).

In *Colbert*, officers conducted a traffic stop on a criminal defendant for observed traffic violations. *U.S. v. Colbert*, 54 F.4th 527, 524. The vehicle took a longer than normal amount of time to pull over and the officer smelled the odor of marijuana coming from the vehicle when he approached. *Id.* The defendant was asked out of the vehicle, but only complied after having to be asked multiple times to do so. *Id.* The defendant was also observed to be acting nervously, and officers also observed

a bulge in his pants pocket after he exited. *Id.* Officers conducted a pat down and felt a hard object, which turned out to be a gun that they then recovered. *Id.* The defendant later challenged the pat down and the 7th Circuit held that the search was reasonable based on the totality of the circumstances. *Id.* at 531. The Court discussed several factors present in that case and noted among them that, "marijuana is an intoxicating substance, and the odor of marijuana in a vehicle or on a suspect raises concern for officers that a defendant may act in an unpredictable and dangerous manner." *Id.* at 528. The Court also noted that "'[A] suspect's failure or refusal to comply with a police officer's order is ... a factor that contributes to a reasonable suspicion that he may be dangerous.'" *Id.* at 529, quoting *U.S. v. Patton*, 705 F.3d 734, 739 (7th Cir. 2013).

In *Patton*, the 7th Circuit cited to *U.S. v. Knight*, 562 F.3d 1314, (11th Cir. 2009), for the proposition that the smell of marijuana and alcohol are among factors that support a pat down. *Patton*, 705 F.3d 734, 739. In *Knight*, the 11th Circuit held that a pat down was proper where officers smelled marijuana coming from a vehicle and the driver of the vehicle argued with officers at the initiation of the stop about exiting the vehicle and having to provide them with identification. *Id.*

In *Bennett*, the Plaintiff conceded that officers had a reasonable basis to stop him for traffic violations, as is the case here. *Bennett v. city of Chi.*, 2025WL2084114, *3. During the stop, officers smelled marijuana coming from the vehicle, asked him to exit, and searched him. *Id.* Plaintiff claimed the search of his person was unreasonable. *Id.* The Court disagreed, finding that the odor of marijuana provided them with probable cause to believe that Plaintiff was violating Illinois law governing the transportation of cannabis and therefore, officers had probable cause to search him for evidence of that crime. *Id.*

As was the case in both *Colbert* and *Knight*, it was reasonable based on the totality of the circumstances for officers here to conduct a brief pat down of the Plaintiff. As the BWC video

7

demonstrates, officers observed Plaintiff seated in a vehicle that is parked in a tow zone. *Infra*, pg. 4. Upon contact with Plaintiff, officers can be heard telling Plaintiff that they can smell the odor of marijuana coming from the vehicle. *Id.* Plaintiff even admits to smoking marijuana. *Id.* Plaintiff also admits to this in his complaint. ECF 1, ¶ 12. The video also shows that Plaintiff immediately became argumentative when officers attempt to explain why they approached in the first place. *Id.* Plaintiff also repeatedly refused to engage with officers verbally, then failed to answer their questions, failed to exit the vehicle after being asked multiple times, and became loud and argumentative from the start. *Id.* In fact, officers asked at least 8 times for Plaintiff to exit before he complied and repeatedly had to ask him to calm down. *Id.* Further, when Plaintiff finally did exit, he brought a jacket that he was not wearing and had just discarded on the driver seat with him. *Id.* Plaintiff claimed that he wanted it because it was cold, but after Tohatan performed a brief pat down of the jacket and attempted to return it and Plaintiff would not accept it at first and did not immediately put it on. *Id.* Plaintiff also repeatedly refused to provide officers with identification. *Id.* The video also shows Plaintiff's demeanor repeatedly fluctuate between cooperative and argumentative. Ex. A and B, *generally*. These factors, when combined with the fact that the Plaintiff was the passenger of a vehicle that was parked in a tow zone outside of a high-end store would lead a reasonable officer to believe that a safety pat down was necessary.

Moreover, as was the case in *Bennett*, officers here smelled marijuana coming from inside the vehicle Plaintiff was seated in. That vehicle was parked, with its hazards on in a tow zone on a public street, indicating it had just arrived. This gave officers probable cause to believe that Plaintiff was improperly carrying cannabis in a vehicle in violation of 625 ILCS 5/11-502.15(c) "because the smell of cannabis in a car alone creates probable cause to believe that this law has been violated." *Bennett v. City of Chicago*, 2025WL2084114, *3. This suspicion was also later proven accurate when it was learned Plaintiff had cannabis on his person. Defendants therefore also had probable cause to search Plaintiff

8

for evidence of that crime. *Id.* For the above reasons, Plaintiff's claims for unreasonable search must fail.

    b.  **The Battery Claim**

In Illinois, Under Illinois common law, battery "is the unauthorized touching of another person." *Luss v. Vill. of Forest Park*, 878 N.E.2d 1193, 1206 (Ill. App. Ct. 2007). "The elements of a claim for civil battery are: (1) an intentional act on the part of the defendant, (2) resulting in offensive contact with the plaintiff's person, and (3) lack of consent to the defendant's conduct." *Poole v. Walmart*, 2025WL1399142 *4, (N.D. Ill. 2025) quoting *Obermeier v. Nw. Mem'l Hosp.*, 134 N.E.3d 316, 333–34 (Ill. App. Ct. 2019). "[B]attery requires more than an intent to contact, in that a defendant must intend to cause a harmful or offensive contact." *Id.* quoting *Censke v. United States*, 27 F.Supp. 3d 920, 931, (N.D. Ill 2014). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Turner v. City of Champaign*, 979 F.3d. 563, 569.

As argued above, the pat down of the Plaintiff was proper. As a result, there was nothing unauthorized about the very limited contact made with Plaintiff during the pat down. Further, the video makes clear there was no intent to cause harm or offensive contact, as the intent was simply to pat Plaintiff over his clothes in order to makes sure there were no weapons or dangerous objects. Moreover, the first "pat down" officers performed was of a jacket that Plaintiff was not even wearing at the time, meaning there was no contact with his person. For these reasons this claim must fail. Regardless, as stated, probable cause to search Plaintiff for improperly stored cannnabis existed as well. *Bennett v. City of Chicago*, 2025WL2084114, *3.

    c.  **The Intrusion on Seclusion Claim**

"[T]he elements of a cause of action for intrusion upon seclusion are: (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is offensive to a reasonable person; (3) the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering. *Acosta v. Scott Labor LLC*, 377 F.Supp2d 647, 649 (N.D. Ill. 2005). "If a plaintiff does not allege private facts, the other three elements of the tort need not be reached." *Id.* quoting *Busse v. Motorola, Inc.* 351 Ill.App.3d 67, 72 (3rd Dist. 2004). Examples of private facts include facts having to do with a person's financial, medical, or sexual life, or things of a private, intimate, or personal nature. *Id.*

Here, Plaintiff has not alleged or shown that Defendants have pried into his private life whatsoever. And nowhere does Plaintiff state that officers learned any private facts from any alleged intrusion. Plaintiff was patted down. And as stated above, officers were reasonable in conducting the limited pat down. For these reasons this claim must fail.

## II. COUNTS V AND VI

### a. False Arrest

"The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). Claims for false arrest or unlawful pretrial detention, whether before or after the initiation of legal process, sound in that Fourth Amendment prohibition. *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019). If probable cause existed, … it is an "absolute defense to claims under section 1983 against police officers for an allegedly unreasonable seizure, whether a false arrest or a wrongful pretrial detention." *Norris v. Serrato*, 761 F. App'x 612, 615 (7th Cir. 2019). An arrest is supported by probable cause "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was

committing, or was about to commit a crime." *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013). This is "a practical, commonsense standard that requires only the type of fair probability on which reasonable people act." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). Pursuant to 625 ILCS 5/11-502.15(c), no passenger in a motor vehicle may possess cannabis within the passenger area of any motor vehicle on a highway in Illinois unless it is inside a secured, sealed or resealable, odor-proof, child resistant cannabis container and is inaccessible. Possessing improperly stored cannabis in violation of this statute provides probable cause to arrest. *Bennett v. City of Chicago*, 2025WL2084114, *4.

As Plaintiff's own complaint puts forth, Plaintiff was in possession of cannabis that was not being carried in a container that conformed with Illinois law. ECF 1, ¶ 49. And as discussed above, the officers' BWC video clearly also demonstrates that Plaintiff was unlawfully in possession of cannabis as well, which provided probable cause to arrest. *Infra*, pg. 4. Plaintiff argues that, but for the alleged illegal search the cannabis would not have been discovered, and therefore the arrest lacked probable cause. ECF 1, ¶ 42. However, the exclusionary rule does not apply in a civil suit under § 1983 against police officers. *See Martin v. Martinez*, 934 F.3d 594, 599 (7th Cir. 2019). *See also Vaughn v. Chapman*, 662 Fed.Appx. 464, 465 (7th Cir. 2016)(The exclusionary rule applies neither to a § 1983 suit against police officers, nor to a malicious prosecution suit under Illinois law). Therefore, probable cause to arrest Plaintiff existed and the false arrest claim must fail.

    b. **Malicious Prosecution**

To state a federal claim for malicious prosecution, plaintiff must plead enough facts to demonstrate that (1) the criminal proceeding was "instituted without any probable cause," (2) the "motive in instituting" the suit "was malicious," and (3) the prosecution "terminated in the acquittal or discharge of the accused," and (4) the accused was seized. *Thompson v. Clark*, — U.S.—, 142 S. Ct.

1332, 1337-38 (2022). However, probable cause is an absolute defense to a claim of malicious prosecution. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). "For a malicious prosecution claim, probable cause is determined by what the officers knew when the charging document was filed, not at the time of arrest." *Bennet v. City of Chicago*, at *4. Probable cause is claim specific in the context of malicious prosecution, meaning it must be established for each offense. *Id.* Plaintiff has not delineated whether he brings this claim under Federal or State law, but the existence of probable cause defeats both. *Vaughn v. Chapman*, 662 Fed.Appx. 662, 467 (7th Cir. 2016).

With respect to the cannabis, Plaintiff was charged with a violation of 625 ILCS 5/11-502.15(c) (unlawful possession of cannabis in a motor vehicle). ECF 1, ¶ 18. As discussed at length above, probable cause existed to arrest and charge Plaintiff with illegally possessing cannabis.

Further, insomuch that Plaintiff is making a State law claim for malicious prosecution, "[t]o state a cause of action for the tort of malicious prosecution, the plaintiff must prove five elements: '(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.' [Citations.]" *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 24. Plaintiff's complaint also fails to allege sufficient facts to demonstrate either of the underlying criminal chargess were terminated in a manner indicative of his innocence. Favorable termination is one of the necessary elements of a malicious prosecution action. *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). In *Swick*, the Illinois Supreme Court stated:

> The abandonment of the proceedings is not indicative of the innocence of the accused when [it] is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial.

*Id.* at 513. "The circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution. [Citation.] Otherwise, every time criminal charges are [dismissed,] a civil malicious prosecution action could result." *Id.* at 513-14. Plaintiff bears the burden of pleading and proving a favorable termination and this burden is met only when he establishes the dismissal was entered for reasons consistent with his innocence. *Id.* at 513.

Here, Plaintiff did not plead facts regarding any of the circumstances leading to the dismissal of the criminal proceedings. Plaintiff simply concludes that they were terminated favorably. ECF 1, ¶ 67. This does not compel an inference that there existed a lack of reasonable grounds to pursue his criminal prosecution. The allegations in the complaint do not disclose why the prosecuting attorney chose to dismiss the criminal charges, nor does Plaintiff allege that it was because prosecutors believed he was innocent. Due to the lack of factual allegations regarding the reasons for the dismissal order, Plaintiff has not met his burden of pleading a favorable termination.

For these reasons, Plaintiff's claim in Count V and VI (and inasmuch as Plaintiff makes a State law claim for malicious prosecution in Count VII) must fail.

### III.    IMMUNITY

#### a. Defendants Are Entitled to Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). "To overcome a defendant's invocation of qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established at the time of the challenged conduct.

If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017).

As discussed above, the pat down of Plaintiff was supported by both reasonable suspicion and probable cause. Further, Plaintiff's arrest was also supported by probable cause. And "[d]ue to qualified immunity's protection, an officer needs only 'arguable' probable cause." *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). "Arguable probable cause exists when a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id.* (cleaned up); *see also Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013). Based on the facts discussed above, officers were reasonable in patting Plaintiff down and it was reasonable to believe probable cause existed to arrest and charge Plaintiff, meaning there was no violation of Plaintiff's Constitutional rights. Therefore Defendants are entitled to immunity.

### b. Defendants Are Entitled to Immunity Under Illinois Law

Lastly, under the Illinois Tort Immunity Act, Defendants are not liable for injuries arising out of the exercise of discretionary acts. 745 ILCS 10/2-201 (2006). Defendants, public employees at all times relevant to Plaintiff's claims, are not liable for their acts or omissions in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202. As discussed, officers acted reasonably in patting Plaintiff down and probable cause existed to arrest and charge Plaintiff. "Actions are not willful and wanton if they are 'objectively reasonable' under the Fourth Amendment." *Woods v. Vill. of Bellwood,* 502 F. Supp. 3d 1297, 1319-20 (N.D. Ill. 2020)(citing *Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018)). Therefore, the acts of Defendants cannot be considered willful or wanton and Defendants are entitled to immunity from Plaintiff's state law claims as well.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint with prejudice and for any such other and further relief this Court deems appropriate.

Dated: August 4, 2025

Respectfully submitted,

BY: */s/ Kevin Meehan*
Kevin Meehan
Assistant Corporation Counsel

David Condron, Assistant Corporation Counsel Supervisor
Kevin Meehan, Assistant Corporation Counsel
City of Chicago, Department of Law
Federal Civil Rights Litigation Division
2 N. LaSalle St., Ste. 420
Chicago, Illinois 60602
(312) 742-1806
Kevin.Meehan@cityofchicago.org
**Counsel for Defendants**

**CERTIFICATE OF SERVICE**

I. an attorney, hereby certify that I have served the **DEFENDANTS; MOTION TO DISMISS** upon all counsel of record by filing a copy with the Clerk of the Northern District of Illinois using the court's electronic case filing system on August 4, 2025.

*S/ Kevin Meehan*  _____

Kevin Meehan

Assistant Corporation Counsel