UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RASHAD RICHARDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 25 C 837 |
| | ) |
| MARIO FUENTES, NIC TOHATAN, and | ) |
| BRANDON RENAULT, in their personal | ) |
| capacities, and EILEEN O'NEILL BURKE, | ) |
| in her official capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Rashad Richardson brings this action against Chicago Police Department ("CPD") Officers Mario Fuentes, Nic Tohatan, and Brandon Renault[1] ("Defendant Officers"), and Cook County State's Attorney Eileen O'Neill Burke[2] under 42 U.S.C. § 1983 and Illinois state law alleging that he was unlawfully searched and arrested during a traffic stop and maliciously prosecuted in violation of his constitutional rights and Illinois state law. Before the Court is the Defendant Officers

---

[1] On April 3, 2025, Richardson learned Renault is deceased. *See* Dkt. # 19. Richardson stated in a status report that he intended to file a motion for substitution under Rule 25(a)(1) "within the appropriate time," but did not do so.

[2] The Court dismissed Count VIII, the sole claim against Cook County State's Attorney Eileen O'Neill Burke, on November 11, 2025. *See* Dkt. # 47.

Fuentes and Tohatan's motion to dismiss. For the reasons below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts come from the complaint and are presumed true for purposes of this motion. All reasonable inferences are drawn in Richardson's favor.

On January 25, 2024, at around 2:30 p.m., Richardson was seated in the front passenger seat of a silver Volkswagen SUV parked near 40 E. Walton Street in Chicago, Illinois, when a CPD vehicle parked in front of him and the Defendant Officers exited to approach the Volkswagen. The officers informed Richardson that the Volkswagen was parked illegally and questioned him through the vehicle's window. Officer Fuentes specifically asked Richardson whether he had been smoking cannabis.[3] Officers Fuentes and Tohatan ordered Richardson to exit the vehicle, with Officer Tohatan stating that he smelled burnt cannabis. Officer Tohatan also claimed he saw cannabis shavings on the Volkswagen's floor.

Richardson complied and exited the vehicle. Over Richardson's objections, Officer Tohatan patted down Richardson's coat. Officers Tohatan and Renault instructed Richardson to stand by the back of the vehicle and continued questioning him. During this questioning, Richardson admitted he smokes cannabis and

---

[3] While Illinois statutes and cases use the term "cannabis," the equivalent of "marijuana" under federal law, the Seventh Circuit uses the term "marijuana," except when quoting Illinois cases. *United States v. Jackson*, 103 F.4th 483, 489 n.1 (7th Cir. 2024). This Court uses the terms interchangeably here. The terms "unburnt" and "raw" are also read to mean the same thing. *Id.* at 489 n.2.

2

acknowledged having a "blunt" on his person. Officer Tohatan then conducted a pat down of Richardson's person, despite Richardson's objections.

Following a brief argument between Officer Fuentes and Richardson across the vehicle, Officer Tohatan ordered Richardson to hand over the blunt in his possession, which Richardson did. During this exchange, Officer Tohatan told Richardson the smell of cannabis lingers on his person when he smokes. Officer Tohatan then requested Richardson's identification, but Richardson refused to provide it. After a short conversation, all three officers began to walk back to their police vehicle. When Richardson asked for their names and badge numbers, all three officers returned. Officer Tohatan then informed the other officers that Richardson had a "half-smoked blunt" on him, at which point Officer Fuentes handcuffed Richardson.

Officer Tohatan searched Richardson for identification, and Officer Fuentes accused Richardson of "play[ing] these games." Dkt. # 2, ¶ 15. When Richardson objected, Officer Fuentes said, "fuck that, he's going to jail," and added, "we're not the regular polices [*sic*]." *Id.* Officers Tohatan and Renault called for an additional CPD vehicle, removed the blunt from Richardson's pockets, and arranged to tow the Volkswagen.

During this process, Officer Fuentes told Richardson, "now you're going to learn how to respect the police." *Id*. at ¶ 17. When Richardson accused the officers of doing whatever it takes to arrest him, Officer Fuentes replied, "Always!" *Id.* Officer Fuentes also stated, "You're not going to tell me 'No.'" *Id.* When Richardson accused the

3

officers of acting as if they "run the world," Officer Fuentes responded, "I do, I run this street!" *Id.*

Richardson was subsequently arrested and arraigned on charges of unlawful possession of cannabis in a motor vehicle (625 ILCS 5/11-502.15(c)) and obstruction of identification (720 ILCS 5/31-4.5). The unlawful possession charge was dropped via *nolle prosequi*, and the obstruction of identification charge was dismissed.

As a result of the foregoing, Richardson filed this lawsuit against Officers Fuentes, Tohatan, and Renault in their individual capacities, and Eileen O'Neill Burke in her official capacity as Cook County State's Attorney. His eight-count complaint alleges various violations of federal and state law, including unreasonable search, intrusion on seclusion, unreasonable arrest, malicious prosecution, and battery. Defendants Fuentes and Tohatan move to dismiss all counts against them under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On a motion to dismiss for failure to state a claim, the Court accepts as true the well-pleaded facts in the complaint and draws all reasonable

inferences in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016). Legal conclusions, however, are not entitled to such treatment. *See Twombly*, 550 U.S. at 555.

## DISCUSSION

### I. Consideration of the Body-Worn Camera ("BWC") Footage

Before addressing the merits of Defendants' motion, the Court must first determine whether it may properly consider the BWC footage attached as exhibits to Defendants' motion to dismiss. Although materials outside the complaint generally are disregarded for motions to dismiss, a "narrow" exception exists if the document is "referred to in the complaint, provided it [is] a concededly authentic document central to the plaintiff's claim." *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Video evidence also may be considered at the pleadings stage if it is attached to the complaint. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Bogie incorporated the video recording into her original complaint both by reference and by physically attaching the video recording to the amended complaint.").

The Court declines to consider the video footage at this stage. Richardson's complaint does not attach or reference BWC footage, and the Court is not persuaded by Defendants' argument that Richardson's use of direct quotations in the complaint incorporates the videos by reference and makes them central to his claim. In the Court's view, the BWC videos are not "central to [Richardson's] claims themselves (like a contract is to a breach-of-contract claim)—though they ultimately might be highly

relevant for the parties' factual disputes related to those claims." *Daoud v. City of Chicago*, 2023 WL 5389015, at *4 (N.D. Ill. 2023); *see also Brown v. City of Chicago*, 594 F. Supp. 3d 1021, 1030 (N.D. Ill. 2022) ("[W]hile the videos will provide key insights into the allegedly unreasonable events . . . the videos are not themselves dispositive of the facts at issue and Plaintiffs could have brought this § 1983 case if the BWC footage never existed."). "If video exists that clearly contradicts [a plaintiff's] story, an early and cost-efficient motion for summary judgment might be appropriate." *Felton v. City of Chicago*, 827 F.3d 632, 637 (7th Cir. 2016).

The Court, having determined that its analysis is confined to the complaint, now turns to Defendants' motion to dismiss.[4]

## II. Unreasonable Search Claims (Counts I and III)

The Fourth Amendment is made applicable to the States by the Fourteenth Amendment. *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 380 n.1 (7th Cir. 2019). "To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023). "Under *Terry v. Ohio*, 392 U.S. 1 (1968), law enforcement officers may conduct brief investigatory stops if they have reasonable suspicion that a person is engaged in criminal activity." *United States v. Smith*, 32 F.4th 638, 641 (7th Cir. 2022). Reasonable suspicion is an objective standard based on the

---

[4] In declining to consider the BWC footage in deciding Defendants' motion, the Court takes no position as to whether the footage supports or undermines Richardson's theories.

totality of "facts available to the officer at the moment of seizure." *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). It "requires more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *Smith*, 32 F.4th at 641 (quoting *United States v. Reedy*, 989 F.3d 548, 552 (7th Cir. 2021)). Probable cause exists where the "'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed' a crime." *Holland v. City of Chicago*, 643 F. 3d 248, 254 (7th Cir. 2011) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Richardson admits that the officers "reasonably and lawfully" removed him from the illegally parked vehicle. Dkt. # 2, ¶ 22. He further admits that he smokes marijuana and had a blunt on his person. However, Richardson contends that the officers lacked reasonable suspicion that Richardson was armed and dangerous as well as probable cause to believe that he committed a crime. Therefore, the pat down of Richardson's coat and person upon exiting the car were unlawful.

Defendants argue that the smell of cannabis emanating from the vehicle provided both reasonable suspicion for a protective pat down and probable cause for a search of Richardson's coat and person. Richardson disagrees, pointing to the complaint's allegation that Officer Tohatan stated that he smelled only burnt, not raw, cannabis. Under Illinois law, the distinction between the smell of burnt cannabis and raw cannabis is an important one during a traffic stop. The Illinois Supreme Court has held that "the

7

odor of *burnt* cannabis, standing alone, without other inculpatory facts, does not provide probable cause to search a vehicle." *People v. Redmond*, 2024 IL 129201, ¶ 54 (emphasis added). However, "[t]he odor of *raw* cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to perform a warrantless search of a vehicle." *People v. Molina*, 2024 IL 129237, ¶ 61 (emphasis added).

While the Seventh Circuit has not yet addressed *Redmond* or *Molina*, it has generally held that "[t]he smell of marijuana alone justifies a Fourth Amendment search or seizure." *United States v. Jackson*, 103 F.4th 483, 488 (7th Cir. 2024); *see also id.* at 490 ("The smell of unburnt marijuana outside a sealed container independently supplied probable cause and thus supported the direction for Jackson to step out of the car for the search."). While *Jackson* specifically involved the smell of raw cannabis, some district courts have relied on *Jackson* for the proposition that the smell of cannabis, regardless of whether burnt or raw, provides probable cause for a search during a traffic stop. *See*, *e.g.*, *Allen v. Taylor*, 2025 WL 885838, at *6 (N.D. Ill. 2025) (citing *Jackson* and concluding, without mentioning whether the officers smelled burnt or raw marijuana in a July 2020 traffic stop, probable cause existed for a search based on the smell of marijuana because "[t]he possession of marijuana is illegal under federal law."); *Bennett v. City of Chicago*, 2025 WL 2084114, at *3 (N.D. Ill. July 24, 2025) (in a case involving a December 2022 traffic stop, stating "[i]n the Seventh Circuit, the

smell of cannabis in a car alone creates probable cause to believe that [625 ILCS 5/11-502.15(b)] has been violated." (citing *Jackson*, 103 F.4th at 488)).[5] This is supported by *Harris v. Melchor*, 2025 WL 972467, at *4 (7th Cir. Apr. 1, 2025), issued several months after the Illinois Supreme Court holdings in *Redmond* and *Molina*. In *Harris*, the Seventh Circuit concluded (albeit in an unpublished opinion), without specifying whether the smell was burnt or raw, that an officer in a November 2021 traffic stop had probable cause to search a vehicle when he smelled marijuana, "even if that belief turned out to be mistaken").

In *United States v. Penman-Keever*, a trooper conducting a traffic stop in January 2024 did not specify at the time whether he smelled raw cannabis or burnt cannabis.[6] 2025 WL 1411433, at *8 (S.D. Ill. 2025). The trooper later testified at the evidentiary hearing that he immediately smelled raw cannabis when he approached the vehicle. The district court did not find this testimony credible due to the very small amount of marijuana ultimately found but did accept the trooper's claim that he also smelled burnt marijuana. Ultimately, the court concluded that "regardless of whether the marijuana that Trooper Jackman smelled was burnt or raw, the search occurred in January 2024, nearly nine months before the Illinois Supreme Court issued its opinion

---

[5] In *Bennett*, the district court stated that the officer smelled "fresh, burnt cannabis" in the car. 2025 WL 2084114, at *3. The Court notes that the defendant officer wrote in his report that he asked the plaintiff out of the vehicle "due to the smell of fresh *and* burnt cannabis." Case No. 24-cv-12658 (N.D. Ill.), Dkt. # 17, at 5 (emphasis added).

[6] The search of Richardson took place on January 25, 2024.

9

in *Redmond* and 11 months before it issued *Molina*." *Id.* "Because the Illinois Supreme Court had not yet resolved the issue," the district court concluded that the trooper had probable cause to search the vehicle when he smelled marijuana emitting from it. *Id.*

Here, Richardson does not dispute that Defendants smelled marijuana during the traffic stop. Marijuana remains illegal under federal law, and the Seventh Circuit "do[es] not defer to Illinois courts on what constitutes probable cause under the Fourth Amendment." *Jackson*, 103 F.4th at 490; *see also United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995) ("A federal court generally does not look to state statutes to assess the validity of an arrest, search, or seizure under the Fourth Amendment."). Thus, Defendants had probable cause to believe that Richardson was carrying improperly stored cannabis in violation of Illinois law and, consequently, probable cause to search him for evidence of the crime. Count I is dismissed.

In Count III, Richardson's second unreasonable search claim is based on the officers' order that Richardson produce the cannabis he possessed. Richardson argues that the officers lacked probable cause that Richardson had committed a crime or that evidence of a crime would be present on Richardson's person.

This claim is a non-starter. Richardson admitted to having a blunt on his person. This admission, coupled with the smell of cannabis (burnt or raw), gave officers probable cause to believe that the blunt was improperly stored in violation of Illinois law. Count III is dismissed.

10

### III. Battery (Count II)

In Count II, Richardson alleges Defendants committed battery by searching his person without his consent. Under Illinois civil law, "battery is the 'unauthorized touching' of another that 'offends a reasonable sense of personal dignity.'" *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008) (quoting *Cohen v. Smith*, 269 Ill. App. 3d 1087, 1090 (5th Dist. 1995)). "[B]attery requires more than an intent to contact, in that a defendant must intend to cause a harmful or offensive contact." *Bakes v. St. Alexius Med. Ctr.*, 2011 IL App (1st) 101646, ¶ 22 (citations omitted). And in the case of a public employee, liability attaches only if his conduct was willful and wanton. 745 ILCS 10/2-202. To be considered willful and wanton, conduct must "show[] an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Willful and wanton is a more stringent standard than the objective reasonableness standard applied to Fourth Amendment claims. *See DeLuna v. City of Rockford,* 447 F.3d 1008, 1013 (7th Cir. 2006) ("[The plaintiff] seeks a determination that conduct which is a reasonable response under the Fourth Amendment nevertheless can constitute willful and wanton conduct under state law. The difficulties of such a quest are apparent."). Defendants had probable cause to search Richardson, and Richardson's complaint is devoid of any allegations that could plausibly suggest an intent to harm or willful and wanton misconduct. Count II is dismissed.

11

### IV. Intrusion Upon Seclusion (Count IV)

Richardson also alleges Defendants' search of his person without consent constituted intrusion upon seclusion. To prevail on an intrusion upon seclusion claim under Illinois law, a plaintiff must establish "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Spiegel v. McClintic*, 916 F.3d 611, 618–19 (7th Cir. 2019) (quoting *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 71 (2004)). Richardson's intrusion upon seclusion claim fails for the same reasons his battery claim fails. Defendants had probable cause to search Richardson. Count IV is dismissed.

### V. Retaliatory Arrest (Count V)

In Count V, Richardson brings a claim for retaliatory arrest in violation of his First Amendment rights. Richardson admits that the officers could have arrested him for improper marijuana storage but, by walking back to their vehicle, they declined to do so and indicated he was free to go. According to Richardson, it was only after he asked for the officers' names and badge numbers that the officers decided to arrest Richardson.

Generally, "'the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250,

256 (2006)). "[I]n most cases, probable cause to arrest defeats a claim of retaliatory arrest." *Lund v. City of Rockford*, 956 F.3d 938, 941 (7th Cir. 2020); *see also Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024) ("[A]s a general rule, a plaintiff bringing a retaliatory-arrest claim 'must plead and prove the absence of probable cause for the arrest.'") (quoting *Nieves*, 587 U.S. at 402). But "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406. Thus, the "no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407 (citation omitted). This narrow "qualification" is commonly referred to as "the *Nieves* exception." *See Gonzalez*, 602 U.S. at 657.

It is undisputed that the officers had probable cause to arrest Richardson, and there are no allegations that suggest the *Nieves* exception applies in this case. Richardson does not allege that he was arrested where other similarly situated individuals who had not engaged in the same sort of protected speech were not arrested. Count V is dismissed.

### VI. Malicious Prosecution (Counts VI and VII)

In Counts VI and VII, Richardson brings federal malicious prosecution claims against Defendants for each offense charged. To state a malicious prosecution claim under the Fourth Amendment, a plaintiff must allege that (1) the prosecution was

13

instituted without any probable cause; (2) the motive in instituting the prosecution was "malicious"; and (3) a favorable termination of the underlying criminal prosecution. *Thompson v. Clark*, 596 U.S. 36, 44 (2022). Probable cause is only a defense to malicious prosecution where it is shown for each charge filed, and the presence of probable cause for one charge does not preclude a malicious prosecution claim where it is lacking for others. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558–59, 562–64 (2024); *see also Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 683 (7th Cir. 2007) (analyzing whether probable cause existed for each offense charged).

The Court can quickly dispose of the malicious prosecution claim based on the charge for unlawful possession of cannabis in a motor vehicle (625 ILCS 5/11-502.15(c)). Richardson produced the improperly stored blunt, giving Defendants probable cause to arrest Richardson and charge him with the offense. Richardson argues that probable cause did not exist because the evidence of the crime was obtained by an illegal search. Unfortunately for Richardson, "the exclusionary rule does not apply in a civil suit under [Section] 1983 against police officers," so a search that violates the Fourth Amendment does not negate probable cause. *Martin v. Martinez*, 934 F.3d 594, 599 (7th Cir. 2019) (citations omitted); *see Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) (per curiam) ("Although Vaughn alleges that this evidence was the fruit of an illegal search of the car, this would not undermine its relevance to the question of probable cause."). Count VI is dismissed, with prejudice.

However, Count VII, which is based on the obstruction of identification charge (720 ILCS 5/31-4.5), may move forward. Defendants do not challenge this claim. *See* Dkt. #45, at 7.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [36] is granted in part and denied in part. Counts I through V are dismissed without prejudice and Count VI is dismissed with prejudice. Count VII remains viable. If Richardson wishes to amend his complaint, he may do so by 12/5/2025. A telephonic status hearing is set for 12/16/2025 at 10:00 a.m.

It is so ordered.

Charles P. Kocoras
United States District Judge

Dated: 11/12/2025